UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX BUCK and JENNA BUCK,<br><br>Plaintiffs,<br><br>v.<br><br>JJ'S CUSTOM BUILDERS, LLC and JONATHAN KING,<br><br>Defendants. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiffs, by and through their undersigned counsel, file this Complaint and aver as follows:

### INTRODUCTION

Defendants required Plaintiffs to purchase an RV during the course of their employment and then refused to take possession of the RV or reimburse the Plaintiffs after their employment had ended. This is an action for damages against Defendants for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, *et seq*., as well as declaratory relief and common law damages and restitution.

### THE PARTIES

1. Plaintiff Alex Buck is an adult individual who may be served via counsel.

2. Plaintiff Jenna Buck is an adult individual who may be served via counsel.

3. Alex and Jenna Buck are husband and wife.

4. Defendant JJ's Custom Builders, LLC ("JJ") is a Pennsylvania LLC with registered address of 119 McKelvey Lane, Holtwood, PA 17532.

1

5. Defendant Jonathan King ("King") is an adult individual residing in Pennsylvania whose address is known to JJ and who may be served via JJ at his routine place of business.

**JURISDICTION AND VENUE**

6. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

7. This Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, as the cause of action arises under the laws of the United States.

8. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to his FLSA claims that they form part of the same case or controversy.

9. The Court has jurisdiction over Defendants because they exist within the Court's geographic purview.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred in this District, and the Defendants exist therein.

**GROUNDS FOR RELIEF**

11. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

12. For all relevant times, JJ is engaged in the building and construction industry and is owned and managed by King.

13. Plaintiffs were employees of JJ but have since resigned.

14. In the course of their employment, King instructed Plaintiffs to assist in purchasing an RV for the company.

15. Defendants intended to use the RV for JJ's own business purposes.

16. Defendants' peculiar arrangement involved paying to purchase the RV but presenting Plaintiffs as the direct purchasers in order to title it in their names.

17. This came about because King, being a practicing member of the Amish community, does not allow himself to legally associate his name with a motor vehicle as a tenet of his faith.

18. Defendants led and induced Plaintiffs to pay the entire purchase price for the RV at the time of sale.

19. JJ and King made plans to give Alex a promotion basically conditioned on Plaintiffs going along with Defendants' arrangement for the RV.

20. Plaintiffs financed the purchase price for the RV and Defendants agreed to reimburse Plaintiffs sixty percent of the upfront purchase price immediately after the purchase. The parties further agreed that JJ would reimburse the remaining forty percent at the end of JJ's fiscal year.

21. Acting on behalf of JJ, King took the responsibility for selecting the RV to purchase.

22. Despite Plaintiffs expressing reservations, King chose the most extravagant model available, substantially more expensive than the other options.

23. The total purchase price for the RV was at least $59,279.00.

24. Later, Defendants reneged on their agreement to reimburse Plaintiffs for any amount for the RV and, to date, never made reimbursement to Plaintiffs to the date.

25. The instruction from King to purchase the RV was an instruction from employer to employee governing Plaintiffs' conduct as part of the employment.

26. The RV would ultimately serve the interests of JJ's, by developing a revenue stream through renting it to work crews and allowing it to send work crews farther away from its base of operations.

27. Following the end of their employment with Defendants, the Plaintiffs offered to transfer title of the RV to the Defendants in exchange for their reimbursement and the Defendants have refused to accept title or possession of the RV by tendering its purchase price.

## COUNT I:
## VIOLATION OF THE FLSA—UNREIMBURSED EXPENSES

28. The foregoing paragraphs are incorporated herein by reference.

29. Plaintiffs were employed by JJ within the meaning of the FLSA.

30. Based on the foregoing, their employment required them to purchase the RV selected by King.

31. This served the primary purpose of advancing JJ's corporate interests as the employer of Plaintiffs.

32. From an employee's wages, an employer cannot make deductions for costs incurred by the employee primarily in performing the duties of employment and for the employer's primary benefit, if the deductions diminish the wages below the minimum wage.

33. FLSA requires wages to be paid to an employee "free and clear." 29 C.F.R. § 531.35.

34. This "anti-kickback" provision means employers cannot evade the rule stated above by paying employees who are then forced to pay themselves (either back to the employer or to someone else for the employer's benefit) costs that cannot be deducted because the deduction would violate the minimum-wage rule.

4

35. Based on the foregoing, Defendants instructed, caused, induced, and directed Plaintiffs to incur a major expense at the employer's direction and for the employer's primary benefit.

36. Based on the foregoing, this instruction came as part of JJ's control over Plaintiffs as their employer in the course of their employment.

37. Based on the foregoing, JJ cannot require Plaintiffs to incur costs on its behalf if paying those costs would deprive Plaintiffs of the minimum wage.

38. Presently, causing and instructing Plaintiffs to incur nearly $60,000.00 in debt obviously offsets their income enough that their net wages from JJ's employment declined below the minimum wage.

39. At material times, Plaintiff Alex made $62,400.00 per year in salary.

40. At material times, Plaintiff Jenna received an hourly wage of $20.00 per hour.

41. Subtracting the $60,000.00 from Alex's salary leads to him being paid $2,400.00 per year, evidently below the minimum wage for a full-time worker in a year.

42. The foregoing violates FLSA with respect to Alex.

43. Plaintiff Jenna did not receive enough hourly compensation to offset the incurred debt so that her net earnings meet or exceed the minimum wage, thus violating FLSA with respect to Jenna.

44. Based on the foregoing, Plaintiffs are entitled to relief under the FLSA.

45. Based on the foregoing, Defendants' violations of the FLSA are so outrageous as to demonstrate willful, wanton, or reckless disregard.

**WHEREFORE**, Plaintiffs respectfully request that the Court render judgment for Plaintiffs and against Defendants for damages to be determined at trial but not less than

$59,279.00; together with punitive and liquidated damages, prejudgment and postjudgment interest, attorneys' fees, costs and such other relief as the Court deems necessary, just, or appropriate.

## COUNT II:
## VIOLATION OF THE WPCL

46. The foregoing paragraphs are incorporated herein by reference.

47. Based on the foregoing, Defendants' instructions and inducements to employees to purchase goods for the company resulted in an express and/or implied contract for repayment of the purchase price.

48. Plaintiffs performed that contract, and return performance has come due.

49. The WPCL enables employees to recover money which they "earned" from their employer.

50. The status of money as "earned" depends on the existence of a contract between employer and employee which the employee can enforce for payment of that amount in "wages."

51. Here, an express and/or implied contract exists which requires Defendants to reimburse them for their purchase of equipment for the company.

52. Based on the foregoing, Defendants' promise to reimburse the Plaintiffs for purchasing the RV is reasonably inferred from their words and conduct or implied as a matter of law from the employment relationship and that Plaintiffs were at all times acting within the scope of such employment.

53. Under the WPCL, Plaintiffs' claim for reimbursement for purchasing the RV is brought within the definition of "wages" through its constituent term, "fringe benefits." The latter includes "reimbursement for expenses."

54. Based on the foregoing, Plaintiffs are entitled to relief under the WPCL.

55. Based on the foregoing, Defendants' violations of the WPCL are so outrageous as to demonstrate willful, wanton, or reckless disregard.

**WHEREFORE**, Plaintiffs respectfully request that the Court render judgment for Plaintiffs and against Defendants for damages to be determined at trial but not less than $59,279.00; together with punitive and liquidated damages, prejudgment and postjudgment interest, attorneys' fees, costs and such other relief as the Court deems necessary, just, or appropriate.

## COUNT III:
## VIOLATION OF THE FLSA—UNPAID TIME

56. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

57. King held a company conference in Las Vegas, Nevada, for JJ's business, which occurred August 29, through September 10, 2025.

58. King directed Plaintiffs to use the RV to chauffeur King's family and associates during the aforementioned company conference.

59. During this entire time, King supervised and issued instructions for Plaintiffs to drive the RV according to King's itinerary for the trip. When King decided to stop and "sightsee," Plaintiffs were directed to do so.

60. King imposed a strict deadline that required Plaintiffs to drive nine to eleven hours per day.

61. Neither Plaintiff was compensated for the time driving King on King's and JJ's business, despite the fact they did all driving required to follow King's instructions.

62. When an employee's work consists of or requires the employee to drive, the time spent driving for the employer must be paid as hours worked. 29 C.F.R. § 785.41.

63. In addition, time spent by an employee in travel where the travel is part of the "principal activity" being done by the employee must be paid as hours worked. 29 C.F.R. § 785.38.

64. King acting through JJ as Plaintiffs' employer instructed Plaintiffs to work in the form of driving the RV.

65. King acting through JJ re-tasked JJ's employees, the Plaintiffs, to drive as the principal activity in their workdays instead of conducting their ordinary principal activities in employment.

66. In this work in the form of driving, the Plaintiffs would alternate spending nine to eleven hours a day physically operating in control of the RV.

67. Only three of the thirteen days in the trip were spent without Plaintiffs driving.

68. Thus, taking the range of hours above, the Plaintiffs worked at least 90 to 110 hours driving the RV for King and JJ.

69. Neither Plaintiff was offered or received compensation for 90 to 110 hours of driving.

70. Even if we assume Plaintiff Alex is not entitled to specific compensation as a salaried worker, if we divide the hours into one half for which Plaintiff Jenna (an hourly worker) was driving, that is 45 to 55 hours of worktime.

71. Jenna never received wages for 45 to 55 hours of working time.

72. In addition, with respect to both Alex and Jenna, they are both entitled to overtime since, assuming alternation in halves, each worked more than 40 hours in a regular workweek.

73. JJ therefore is improperly withholding compensation for a significant amount of work performed by both Plaintiffs as part of their employment which compensation they are entitled to.

74. King personally took charge of the trip and was fully aware of Plaintiffs' labor.

75. Plaintiff Alex specifically asked King what compensation would be provided.

76. Instead of offering or providing compensation, King instructed Alex to consume earned paid-time-off.

77. In fact, King became upset when Alex did not log the entire duration of the trip as paid-time-off.

78. King and JJ acting through King therefore acted willfully in that they knew Plaintiffs should have been paid while declining to pay them.

79. Based on the foregoing, Plaintiffs are entitled to relief under the FLSA.

**WHEREFORE**, Plaintiffs respectfully request that the Court render judgment for Plaintiffs and against Defendants for damages to be determined at trial; together with punitive and liquidated damages, prejudgment and postjudgment interest, attorneys' fees, costs and such other relief as the Court deems necessary, just, or appropriate.

## COUNT IV:
## BREACH OF CONTRACT

80. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

81. Based on the foregoing, Plaintiffs and Defendants entered into a valid and binding express and/or implied contract for Defendants to reimburse the Plaintiffs for the purchase of the RV for JJ's business.

82. Defendants breached the aforementioned contract and otherwise is liable for failing to reimburse the Plaintiffs for the purchase price of the RV.

83. Based on the foregoing, Plaintiffs are entitled to damages, including but not necessarily limited to the full purchase price that they financed and interest that has accrued and will continue to accrue on that financed amount.

**WHEREFORE**, Plaintiffs respectfully request that the Honorable Court render judgment in their favor and against the Defendants, for damages in an amount to be determined at trial; together with costs and prejudgment and postjudgment interest at the legal rate, and such other relief as this Court deems just and necessary.

## COUNT V:
## QUANTUM MERUIT AND UNJUST ENRICHMENT

84. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

85. This Count is pled in the alternative to Count IV.

86. Where Plaintiffs purchased the RV, a benefit was conferred on Defendants in the nature of avoiding the payment of a business expense out-of-pocket and Defendants appreciated the same.

87. The retention of the aforementioned benefit under the circumstances of this case would be inequitable without payment for value.

88. Based on the foregoing, Plaintiffs are entitled to relief under the common law of quantum meruit or unjust enrichment.

**WHEREFORE**, Plaintiffs respectfully request that the Honorable Court render judgment in their favor and against the Defendants, for restitutionary damages in an amount to be determined at trial; together with costs and prejudgment and postjudgment interest at the legal rate, and such other relief as this Court deems just and necessary.

## COUNT VI:
## DECLARATORY JUDGMENT

89. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

90. Plaintiffs have not received any authorization from the Defendants to sell the RV.

91. Plaintiffs have not sold the RV but desire to do so in order to mitigate their damages.

92. Based on the foregoing, an actual controversy is before the Court where the Court may declare the rights and other legal relations of the parties seeking such declaratory.

93. Based on the foregoing, Plaintiffs are entitled to relief under 28 U.S.C. § 2201, which will terminate the controversy or remove uncertainty.

**WHEREFORE**, Plaintiffs respectfully request that the Honorable Court render a declaratory judgment in their favor and against the Defendants, namely, declare that the Plaintiffs may sell the RV and apply the proceeds as mitigation to their damages; and such other relief as this Court deems just and necessary.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: February 20, 2026     By:     /s/ Joel A. Ready
Joel A. Ready, Esquire
Attorney I.D. # 321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875